UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

JAY F.,

                    Plaintiff,

    v.

COMMISSIONER OF SOCIAL
SECURITY,

                  Defendant.

NO. 1:19-CV-3069-TOR

ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY
JUDGMENT AND DENYING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

BEFORE THE COURT are the parties' cross-motions for summary judgment (ECF Nos. 12 and 13). Plaintiff is represented by D. James Tree. Defendant is represented by Jacob Phillips. This matter was submitted for consideration without oral argument. The Court has reviewed the administrative record and the parties' completed briefing and is fully informed. For the reasons discussed below, the Court **GRANTS** Plaintiff's motion and **DENIES** Defendant's motion.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited: the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158-59 (9th Cir. 2012) (citing 42 U.S.C. § 405(g)).  "Substantial evidence" means relevant evidence that "a reasonable mind might accept as adequate to support a conclusion."  *Id.* at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and citation omitted).  In determining whether this standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation.  *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner.  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."  *Molina v. Astrue*, 674

F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

### FIVE STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that [he or she] is not only unable to do [his or her] previous work[,] but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the Commissioner

considers the claimant's work activity.  20 C.F.R. §§ 404.1520(a)(4)(i),

416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the

Commissioner must find that the claimant is not disabled.  20 C.F.R. §§

404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activities, the analysis

proceeds to step two.  At this step, the Commissioner considers the severity of the

claimant's impairment.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  If the

claimant suffers from "any impairment or combination of impairments which

significantly limits [his or her] physical or mental ability to do basic work

activities," the analysis proceeds to step three.  20 C.F.R. §§ 404.1520(c),

416.920(c).  If the claimant's impairment does not satisfy this severity threshold,

however, the Commissioner must find that the claimant is not disabled.  *Id.*

At step three, the Commissioner compares the claimant's impairment to

several impairments recognized by the Commissioner to be so severe as to

preclude a person from engaging in substantial gainful activity.  20 C.F.R. §§

404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the impairment is as severe or more

severe than one of the enumerated impairments, the Commissioner must find the

claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does meet or exceed the severity

of the enumerated impairments, the Commissioner must pause to assess the

claimant's "residual functional capacity."  Residual functional capacity ("RFC"), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations (20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1)), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past ("past relevant work").  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and work experience.  *Id.*  If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).  If the claimant is not capable of adjusting to other

work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  *Id.*

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On February 16, 2015, Plaintiff filed an application for Title II disability insurance benefits.  Tr. 231-34.  On November 16, 2015, Plaintiff filed an application for Title XVI supplemental security income benefits.  Tr. 238-43.  Both applications alleged an onset date of April 30, 2014.  Tr. 231, 238.  The applications were denied initially, Tr. 134-40, and on reconsideration, Tr. 142-48. Plaintiff appeared at a hearing before an administrative law judge ("ALJ") on July 25, 2017.  Tr. 43-98.  On March 2, 2018, the ALJ denied Plaintiff's claim.  Tr. 12-38.

As a preliminary matter, the ALJ found Plaintiff met the insured status requirements of the Social Security Act through March 31, 2018.  Tr. 17.  At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since

April 30, 2014, the alleged onset date. *Id.* At step two, the ALJ found Plaintiff had the following severe impairments: mild degenerative vertebral osteophytes at T12-L1 and mild broad based thoracic dextroscoliosis, fibromyalgia, obesity, major depressive disorder, generalized anxiety disorder, marijuana dependence in reported remission, and nondependent alcohol abuse in reported remission. Tr. 18. At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 20. The ALJ then found Plaintiff had the RFC to perform light work with the following limitations:

> [Plaintiff] is able to lift and/or carry ten pounds frequently and twenty pounds occasionally. He is able to stand and/or walk for about six hours total in an eight-hour workday with normal breaks. He is able to sit for six hours total in an eight-hour workday with normal breaks. He is able to perform work limited to frequent stooping, kneeling, crouching, crawling, and climbing of ramps or stairs. He is able to perform work limited to no climbing of ladders, ropes, or scaffolds. He is unlimited in his ability to balance. He is able to perform work limited to frequent handling and fingering with the bilateral upper extremities. He is able to perform work limited to no overhead reaching and frequent reaching in all other directions with the left, nondominant upper extremity. He is able to have concentrated exposure to extreme cold, vibration, and hazards. He is able to perform work limited to simple routine tasks and some familiar detailed tasks. He is able to perform work limited to no requirement to interact with the general public as a part of job tasks but the general public can be in the vicinity otherwise. He is able to perform work limited to superficial and infrequent interaction with co-workers, but is limited to no interaction with co-workers as part of job tasks, such as required with tandem or cooperative work. He is able to perform work limited to occasional interaction with supervisors.

Tr. 22.

At step four, the ALJ found Plaintiff was not capable of performing past relevant work. Tr. 30. At step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and testimony from a vocational expert, there were other jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as cleaner housekeeping, assembler production, and deliverer, outside. Tr. 31. The ALJ concluded that Plaintiff was not under a disability, as defined in the Social Security Act, from April 30, 2014, through March 2, 2018, the date of the ALJ's decision. Tr. 32.

On February 15, 2019, the Appeals Council denied review, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for the purposes of judicial review. 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act. Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ properly weighed Plaintiff's symptom testimony;

2. Whether the ALJ properly weighed the medical opinion evidence;

3. Whether the ALJ properly weighed the lay opinion evidence; and

4.  Whether the ALJ's RFC formulation should have compelled a disability

finding at step five.

ECF No. 12 at 2.

## DISCUSSION

### A.  Plaintiff's Symptom Testimony

Plaintiff contends the ALJ failed to rely on clear and convincing reasons to discredit his symptom testimony.  ECF No. 12 at 18-21.

An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms.  SSR 16-3p, 2016 WL 1119029, at *2.  "First, the ALJ must determine whether there is 'objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.'"  *Molina*, 674 F.3d at 1112 (quoting *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)).  "The claimant is not required to show that [the claimant's] impairment 'could reasonably be expected to cause the severity of the symptom [the claimant] has alleged; [the claimant] need only show that it could reasonably have caused some degree of the symptom.'"  *Vasquez*, 572 F.3d at 591 (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of

the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted). General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why he or she discounted claimant's symptom claims). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2016 WL 1119029, at *7-*8; 20

C.F.R. §§ 404.1529(c), 416.929(c). The ALJ is instructed to "consider all of the evidence in an individual's record," "to determine how symptoms limit ability to perform work-related activities." SSR 16-3p, 2016 WL 1119029, at *2.

The ALJ found Plaintiff's impairments could reasonably be expected to cause the alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the evidence. Tr. 23.

### 1. Inconsistent Medical Evidence

The ALJ found Plaintiff's symptom reporting was inconsistent with the medical evidence in the record. Tr. 23-24. An ALJ may not discredit a claimant's symptom testimony and deny benefits solely because the degree of the symptoms alleged is not supported by objective medical evidence. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005); *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). However, the objective medical evidence is a relevant factor, along with the medical source's information about the claimant's pain or other symptoms, in determining the severity of a claimant's symptoms and their disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2).

Here, the ALJ found Plaintiff's complaints about fibromyalgia symptoms were inconsistent with the lack of supporting evidence in the record. Tr. 24. "In evaluating whether a claimant's residual functional capacity renders them disabled because of fibromyalgia, the medical evidence must be construed in light of fibromyalgia's unique symptoms and diagnostic methods." *Revels v. Berryhill*, 874 F.3d 648, 662 (9th Cir. 2017). Fibromyalgia "is diagnosed 'entirely on the basis of patients' reports of pain and other symptoms,' and 'there are no laboratory tests to confirm the diagnosis.'" *Id.* at 666 (citing *Benecke v. Barnhart*, 379 F.3d 587, 590 (9th Cir. 2004)). "[T]ender-point examinations themselves constitute 'objective medical evidence' of fibromyalgia." *Revels*, 874 F.3d at 663. "[A] person with fibromyalgia may have 'muscle strength, sensory functions, and reflexes [that] are normal.'" *Id.* at 663. Normal objective examination results can be "perfectly consistent with debilitating fibromyalgia." *Id.* at 666.

The ALJ accurately noted that the record did not document any evidence of a tender point examination being performed, nor did the record document other possible diagnoses being considered and ruled out before diagnosing fibromyalgia,

in accordance with the relevant diagnostic criteria.[1]  Tr. 18; *see* Tr. 517-74, 799-855, 942-58.  However, the ALJ concluded that the record supported a finding that fibromyalgia was a severe impairment.  Tr.18.  It is inconsistent for the ALJ to conclude that the record contains enough evidence to support a finding that fibromyalgia is a severe impairment, yet also conclude that Plaintiff's symptom reporting is less credible because there is no evidence in the record to indicate he has fibromyalgia.  This conclusion is not supported by substantial evidence.

The ALJ also found Plaintiff's reporting of his sleep disturbances was inconsistent with the medical evidence.  Tr. 24.  The ALJ noted Plaintiff testified that he needed medication to sleep, and that sleep medications are only partially effective.  Tr. 61-63.  The ALJ found this to be inconsistent with treatment notes. Tr. 24 (citing Tr. 715 (prescribing 150 mg of Seroquel); Tr. 733 (continuing prescription for Ambien); Tr. 765 (Plaintiff reported Ambien was only effective half of the time and provider agreed to transition from Ambien to Depakote); Tr. 988 (Plaintiff reported olanzapine no longer worked for sleep and provider agreed to change to Seroquel)).  The ALJ failed to explain how these treatment notes,

---

[1]  Although Plaintiff notes that one treatment note documents tender points at Plaintiff's calves, hips, back, neck, shoulders, and wrists, this information is based on Plaintiff's self-report rather than a tender point examination.  Tr. 948.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 13

which document Plaintiff's struggle to find effective sleep medication, failed to support Plaintiff's allegations that he relied on medications to sleep and that medications were only partially effective. This conclusion is not supported by substantial evidence.

Finally, the ALJ found that Plaintiff's symptom reporting was not supported by the evidence because Plaintiff's "report of suicidal ideation also closely follows situations in which [Plaintiff's] behavioral choices are not supported." Tr. 24. In support of this finding, the ALJ observed that Plaintiff's two psychiatric hospitalizations occurred after being fired from a job and being involved in a motor vehicle collision. *Id.*; *see* Tr. 441-42 (describing past psychiatric hospitalization one day after being fired); Tr. 488-90 (describing Plaintiff's psychiatric hospitalization following motor vehicle collision and citation for reckless driving). The ALJ failed to explain how this pattern undermined Plaintiff's symptom reporting. Tr. 24. Moreover, the fact that certain external events may trigger an exacerbation of mental health symptoms is not a sufficient reason to discredit a claimant's report that they experience the symptoms. *See Wilson v. Comm'r, Soc. Sec. Admin.*, No. 3:15-cv-00691-HZ, 2016 WL 1598867, at *9 (D. Or. Apr. 20, 2016) ("Whatever the source of her mental and emotional stress, the ALJ points to no evidence suggesting that [the claimant] did not actually suffer from the

symptoms she claimed."). This was not a clear and convincing reason to discredit Plaintiff's symptom reporting.

### 2. *Symptom Exaggeration*

The ALJ found that Plaintiff reported increased subjective mental health symptoms following his application for benefits and initial denial. Tr. 24. Evidence of being motivated by secondary gain is sufficient to support an ALJ's rejection of testimony evidence. *See Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1020 (9th Cir. 1992). Therefore, the tendency to exaggerate or engage in manipulative conduct during the process is a permissible reason to discount the credibility of the claimant's reported symptoms. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). In support of this finding, the ALJ cited two treatment notes that correspond in date to Plaintiff's application and initial denial. *See* Tr. 231 (Plaintiff's application for benefits completed on February 17, 2015); Tr. 731 (March 4, 2015: mental status examination documented depressed mood, restricted affect, and suicidal and assaultive thoughts); Tr. 134 (initial notice of disapproved claim dated July 16, 2015); Tr. 711 (July 31, 2015: mental status examination documented sad mood, constricted affect, and suicidal ideation).

The ALJ's conclusion implies that Plaintiff exaggerated his subjective symptoms at times when he believed it would help his claim for benefits; however, the ALJ offers no comparative treatment notes from other time periods to support

this conclusion. Tr. 24. Contrary to the ALJ's characterization of the evidence, the longitudinal record from before and after the dates the ALJ identified similarly document abnormal mood and suicidal ideation. *See, e.g.,* Tr. 398 (April 4, 2014: mental status examination documented mild agitation, anxiety, and suicidal ideation); Tr. 430 (April 22, 2014: Plaintiff presented to the emergency department with suicidal thoughts); Tr. 478 (May 12, 2014: mental status examination showed angry mood, affect increased in intensity, and suicidal thought content); Tr. 606 (July 16, 2015: some sadness and hopelessness, moderate suicide risk); Tr. 674 (August 1, 2015: Plaintiff hospitalized for suicidal ideations); Tr. 1043 (October 28, 2016: Plaintiff reported increased suicidal ideation); Tr. 970 (April 28, 2017: Plaintiff reported an increase in suicidal ideation). The ALJ's finding that Plaintiff exaggerated his symptoms near notable case development dates to support his claim for benefits is not supported by substantial evidence.

### 3. *Ability to Work with Impairments*

The ALJ found Plaintiff's symptom reporting was inconsistent with his work and volunteer activities. Tr. 24. Working with an impairment supports a conclusion that the impairment is not disabling. *Drouin v. Sullivan*, 966 F.2d 1255, 1258 (9th Cir. 1992); *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (seeking work despite impairment supports inference that impairment is not disabling). However, the Ninth Circuit has "recognized that

disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).

Here, the ALJ observed that despite Plaintiff's allegations that his impairments, including fibromyalgia, limited his ability to work, Plaintiff had a fibromyalgia diagnosis dating back to 2004 and was able to work at substantial gainful activity levels with that diagnosis. Tr. 24; *see* Tr. 255-60. However, the ALJ's conclusion disregards without comment Plaintiff's testimony that his symptoms have worsened since he stopped working. Tr. 49, 86-88. Additionally, the ALJ observed that Plaintiff reported doing volunteer work for the Red Cross during the relevant period. Tr. 24; *see* Tr. 711 (Plaintiff reported delivering blood for the Red Cross once per week); Tr. 731 (Plaintiff's volunteer work ongoing); Tr. 765 (same), 1036 (same). However, the record does not document what kinds of activities this volunteer work involved, and it indicates Plaintiff volunteered only once per week. Tr. 711. The ALJ's conclusion that this volunteer work was inconsistent with an alleged inability to work a full-time job is not supported by substantial evidence.

The ALJ also observed that despite Plaintiff's testimony that he was fired from various jobs due to his impairments, Plaintiff also reported getting along with some supervisors at some jobs. Tr. 23; *see* Tr. 84. The ALJ reasonably interpreted

this evidence as indicating Plaintiff retained some ability to interact with supervisors and incorporated it into the RFC, which allows for some interaction with supervisors. Tr. 22-23. Because this is a rational interpretation of this testimony, this finding is upheld. *Burch*, 400 F.3d at 679.

### 4. Inconsistent Symptom Reporting

The ALJ found Plaintiff's symptom reporting was undermined because Plaintiff made inconsistent symptom reports. Tr. 25. In evaluating a claimant's symptom claims, an ALJ may consider the consistency of an individual's own statements made in connection with the disability-review process with any other existing statements or conduct under other circumstances. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (The ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid.").

Here, the ALJ found Plaintiff inconsistently reported his symptoms because his initial function report indicated he could not work "solely" due to mental health impairments, while Plaintiff's hearing testimony was that he could not work due to physical impairments which impact his mental health. Tr. 23-24; *see* Tr. 298-305. However, the ALJ's finding mischaracterizes Plaintiff's allegations. Plaintiff's function report describes both physical and mental limitations. *See* Tr. 303. This finding is not supported by substantial evidence.

The ALJ also found Plaintiff inconsistently reported his sleep habits between the hearing and his treatment providers. Tr. 25. The ALJ observed Plaintiff testified that he obtained "no sleep" one to two nights per week, but that he failed to report similar sleeplessness to his treatment providers. Tr. 25 (citing Tr. 965-66 (Plaintiff reported trouble falling and staying asleep), 727 (Plaintiff reported sleeping 6-7 hours on most nights)). Although the ALJ cited one treatment note documenting improved sleep, the longitudinal record reveals Plaintiff's allegations of poor sleep are supported throughout the record. *See, e.g.*, Tr. 441 (Plaintiff reported often sleeping only 2-3 hours per night); Tr. 1126 (Plaintiff reported poor sleep totaling 4-5 hours); Tr. 1103 (Plaintiff reported getting 3 hours of sleep); Tr. 1114 (Plaintiff reported getting 3-4 hours of poor sleep); Tr. 1086 (Plaintiff reported medications no longer provided enough sedation to allow him to sleep); Tr. 986 (Plaintiff reported using good sleep hygiene techniques and still being unable to sleep). The ALJ is not permitted to "cherry pick" from mixed evidence to support a denial of benefits. *Garrison*, 759 F.3d at 1017 n.23. The ALJ's conclusion that Plaintiff inconsistently reported his sleep habits is based on an impermissibly selective reading of the record. This finding is not supported by substantial evidence.

The ALJ also found Plaintiff inconsistently reported his physical activity. Tr. 25. The ALJ noted that Plaintiff testified that he stopped going to his gym in

the summer of 2016. Tr. 58-59. However, the ALJ also observed that Plaintiff

reported still being a member of his gym in May 2017. Tr. 952; *see also* Tr. 1036

(Plaintiff reported going to the gym in November 2016). The ALJ reasonably

concluded these reports were inconsistent.

### 5. Inconsistent Substance Abuse Reporting

The ALJ found Plaintiff's symptom reporting was undermined because

Plaintiff inconsistently reported his substance abuse. Tr. 25. Conflicting or

inconsistent statements about drug use are appropriate grounds for the ALJ to

discount a claimant's reported symptoms. *Thomas*, 278 F.3d at 959. Here, the

ALJ found Plaintiff inconsistently reported his alcohol consumption. Tr. 25. In

support of this finding, the ALJ cited the following evidence: On April 28, 2014,

Plaintiff reported that he had a history of alcohol dependence but that he had

significantly reduced his drinking over the last 5 years and only drank once or

twice per year. Tr. 447. On January 5, 2015, Plaintiff reported drinking

occasionally, maybe two times per month. Tr. 760. On June 24, 2015, Plaintiff

reported using alcohol rarely. Tr. 719. On July 29, 2015, Plaintiff reported that he

would drink "a couple of times a month, but it's not a big amount," but also

disclosed that he had consumed a six-pack two nights prior. Tr. 928. This

evidence shows that Plaintiff's alcohol consumption may have fluctuated during

the relevant period, but it does not support the ALJ's conclusion that Plaintiff

inconsistently reported his alcohol consumption. This finding is not supported by substantial evidence.

The ALJ also found Plaintiff inconsistently reported his caffeine consumption. Tr. 25. In support of this finding, the ALJ cited the following evidence: On July 29, 2015, Plaintiff reported drinking a couple of cups of coffee per day. Tr. 928. In August 2016, October 2016, January 2017, and February 2017, Plaintiff endorsed excessive caffeine use. Tr. 999, 1012, 1046, 1075. In May 2017, Plaintiff reported he was not drinking caffeine. Tr. 948. Again, the evidence the ALJ cited shows that Plaintiff's caffeine use changed over the relevant period, but it does not show an inconsistency in Plaintiff's reporting. This finding is similarly not supported by substantial evidence.

Overall, the majority of the ALJ's findings regarding Plaintiff's symptom testimony were either not clear and convincing reasons to discredit his testimony or were not supported by substantial evidence. Because the ALJ's errors are so numerous, they cannot be considered harmless. The ALJ is instructed to reconsider Plaintiff's symptom testimony on remand.

## B. Medical Opinion Evidence

Plaintiff challenges the ALJ's consideration of the opinions of Rebekah Cline, Psy.D., Caryn Jackson, M.D., and Marybeth Wheeler, ARNP. ECF No. 12 at 4-13.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted). Generally, the opinion of a treating physician carries more weight than the opinion of an examining physician, and the opinion of an examining physician carries more weight than the opinion of a reviewing physician. *Id.* In addition, the Commissioner's regulations give more weight to opinions that are explained than to opinions that are not, and to the opinions of specialists on matters relating to their area of expertise over the opinions of non-specialists. *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray*, 554 F.3d at 1228 (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (citing *Lester*,

81 F.3d at 830-831). The opinion of a nonexamining physician may serve as substantial evidence if it is supported by other independent evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

### 1. Dr. Cline

Dr. Cline examined Plaintiff on July 29, 2015 and diagnosed Plaintiff with major depressive disorder, personality disorder NOS with features of cluster B disorders including borderline and histrionic personality disorders, and anxiety disorder NOS. Tr. 927-31. Dr. Cline opined Plaintiff had moderate limitations in his ability to make simple work-related decisions, ask simple questions or request assistance, and complete a normal work day and work week without interruptions from psychologically based symptoms; that Plaintiff had marked limitations in his ability to communicate and perform effectively in a work setting and maintain appropriate behavior in a work setting; and that Plaintiff's impairments would persist for 3-9 months with treatment. Tr. 929-30. The ALJ rejected Dr. Cline's durational limitation opinion, but otherwise gave Dr. Cline's opinion great weight. Tr. 28. Plaintiff does not contest the ALJ's rejection of Dr. Cline's durational limitation opinion. ECF No. 12 at 6. Instead, Plaintiff contends Dr. Cline's opinion should have been incorporated into the RFC differently and should have compelled a disability finding. ECF No. 12 at 5-8.

1    "[T]he ALJ is responsible for translating and incorporating clinical findings

2    into a succinct RFC." *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006

3    (9th Cir. 2015).  Where evidence is subject to more than one rational interpretation,

4    the ALJ's conclusion will be upheld.  *Burch*, 400 F.3d at 679.  The Court will only

5    disturb the ALJ's findings if they are not supported by substantial evidence.  *Hill*,

6    698 F.3d at 1158.  Here, the ALJ reasonably concluded that Dr. Cline's opinion

7    that Plaintiff had marked impairment in his ability to communicate and maintain

8    appropriate behavior in a work setting translated into an RFC that restricted

9    Plaintiff to no interaction with the general public, no interaction with co-workers as

10   part of job tasks, and only occasional interaction with supervisors.  Tr. 22.

11   Plaintiff argues that Dr. Cline's opinion that Plaintiff would have moderate

12   impairment in his ability to complete a normal workday and workweek without

13   interruptions from psychologically based symptoms should be interpreted as a

14   limitation in completing a full workday or workweek at all.  ECF No. 12 at 6-7.

15   However, the Court may not reverse the ALJ's decision based on Plaintiff's

16   disagreement with the ALJ's interpretation of the record.  *See Tommasetti v.*

17   *Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).  Because the ALJ reasonably

18   incorporated Dr. Cline's opinion into the RFC, the ALJ's finding is upheld.  *Burch*,

19   400 F.3d at 679.

20

2. *Dr. Jackson*

Dr. Jackson examined Plaintiff on July 27, 2015, and diagnosed Plaintiff with chronic back pain, scoliosis, chronic pain, hyperlipidemia, and GERD. Tr. 932-36. Dr. Jackson opined Plaintiff's back pain and chronic pain would cause moderate to marked impairment in his ability to perform basic work activities, that Plaintiff's scoliosis would cause mild impairment in his ability to perform basic work activities, and that Plaintiff was limited to sedentary work. Tr. 933-34. The ALJ gave Dr. Jackson's opinion little weight. Tr. 27. Because Dr. Jackson's opinion was contradicted by Dr. Saue, Tr. 108-09, and Dr. Bernardez-Fu, Tr. 125-27, the ALJ was required to provide specific and legitimate reasons for rejecting Dr. Jackson's opinion. *Bayliss*, 427 F.3d at 1216.

First, the ALJ found Dr. Jackson's opinion was not supported by the record, including Dr. Jackson's own treatment notes. Tr. 27. Relevant factors to evaluating any medical opinion include the amount of relevant evidence that supports the opinion, the quality of the explanation provided in the opinion, and the consistency of the medical opinion with the record as a whole. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). Furthermore, a physician's opinion may be rejected if it is unsupported by the physician's treatment notes. *Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir. 2003). The ALJ noted that despite opining significant limitations from back pain, Dr. Jackson's treatment notes documented Plaintiff's

back pain was "under reasonable control" with home exercise and weight loss. *Compare* Tr. 933-34 *with* Tr. 937. The ALJ reasonably concluded that this evidence was inconsistent with Dr. Jackson's opined limitations.

Second, the ALJ found Dr. Jackson's opinion was based on Plaintiff's subjective symptom reporting, which the ALJ found to be less credible. Tr. 27. A physician's opinion may also be rejected if it is too heavily based on a claimant's properly discounted complaints. *Tonapetyan*, 242 F.3d at 1149. The ALJ reasoned that because Dr. Jackson's physical examination showed minimal findings, Dr. Jackson's opinion was more heavily based on Plaintiff's subjective pain complaints. Tr. 27. However, for several reasons discussed *supra*, the ALJ's consideration of Plaintiff's symptom testimony is not supported by substantial evidence. Accordingly, the ALJ's rejection of Dr. Jackson's opinion for relying on Plaintiff's symptom testimony is similarly unsupported.

Third, the ALJ found Dr. Jackson's opinion was inconsistent with Plaintiff's daily activities. Tr. 27. An ALJ may discount a medical source opinion to the extent it conflicts with the claimant's daily activities. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999). The ALJ noted that Plaintiff reported going fishing once and delivering blood once per week for the Red Cross. Tr. 711. The ALJ concluded but did not explain how these mild activities were

inconsistent with Dr. Jackson's opined limitation to sedentary work. Tr. 27. This finding is not supported by substantial evidence.

Fourth, the ALJ found Dr. Jackson's opinion was entitled to less weight because Dr. Jackson did not review other treatment notes. Tr. 27. The extent to which a medical source is "familiar with the other information in [the claimant's] case record" is relevant in assessing the weight of that source's medical opinion. *See* 20 C.F.R. §§ 404.1527(c)(6), 416.927(c)(6). However, Dr. Jackson's treatment notes indicate that she reviewed previous x-rays when assessing Plaintiff's back pain allegations. Tr. 938. This finding is not supported by substantial evidence.

Although the ALJ provided one supported reason for rejecting Dr. Jackson's opinion, the ALJ's three other findings were not supported. Because this case is remanded for other reasons, the ALJ is instructed to also reconsider Dr. Jackson's opinion on remand.

*3. Ms. Wheeler*

Ms. Wheeler, Plaintiff's treating ARNP, opined on February 22, 2017 that Plaintiff would need to lie down for 1-2 hours during the day due to fatigue and fibromyalgia symptoms, that Plaintiff's medications limit his activities because his psychiatric medications can be sedating, that work on a regular and continuous basis would cause Plaintiff's condition to deteriorate by increasing fatigue and

pain, and that Plaintiff's impairments would likely cause him to miss four or more days of work per month if he were attempting to work a 40-hour per week schedule. Tr. 873-74. The ALJ gave this opinion little weight. Tr. 27.

As an ARNP, Ms. Wheeler is not an acceptable medical source. 20 C.F.R. §§ 404.1502(a), 416.902(a) (2011).[2] The opinion of an acceptable medical source such as a physician or psychologist is given more weight than that of an "other source." *Gomez v. Chater*, 74 F.3d 967, 970-71 (9th Cir. 1996) (superseded by regulation on other grounds). Non-medical testimony can never establish a diagnosis or disability absent corroborating competent medical evidence. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). However, the ALJ is required to "consider observations by non-medical sources as to how an impairment affects a claimant's ability to work." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir.

---

[2]     Plaintiff notes that new Social Security Administration regulations recognize ARNPs as "acceptable medical sources." ECF No. 12 at 4. However, these new regulations only apply to claims that were filed on or after March 27, 2017. *See David D. v. Saul*, --- F. Supp. 3d. ---, 2019 WL 3776998, at *4 (D. Or. Aug. 12, 2019). The filing date is measured by the date the application for benefits is filed. 20 C.F.R. §§ 404.614, 416.325. Because Plaintiff filed for benefits in 2015, the new regulations do not apply to his case.

1987). An ALJ is obligated to give reasons germane to "other source" testimony

before discounting it. *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).

First, the ALJ found that Ms. Wheeler's opinion was not consistent with

Plaintiff's work history. Tr. 27. Inconsistency with a claimant's activities is a

germane reason to reject lay testimony. *Carmickle v. Comm'r, Soc. Sec. Admin.*,

533 F.3d 1155, 1163-64 (9th Cir. 2008); *Lewis v. Apfel*, 236 F.3d 503, 512 (9th

Cir. 2001). The ALJ noted that Ms. Wheeler opined that Plaintiff's impairments

had existed since 2005. Tr. 874. However, the ALJ also observed that Plaintiff

worked at substantial gainful activity levels between 2005 and his alleged onset

date. *See* Tr. 255-60. This was a germane reason to give Ms. Wheeler's opinion

less weight.

Second, the ALJ found that Ms. Wheeler's opinion was not supported by her

own treatment notes. Tr. 27. Inconsistency with the medical evidence is a

germane reason for rejecting lay witness testimony. *See Bayliss*, 427 F.3d at 1218;

*Lewis*, 236 F.3d at 512. Here, the ALJ found that Ms. Wheeler's opinion was

inconsistent with her subsequent treatment note,[3] which documented "normal gait,

---

[3]     Based on the May 2017 treatment note, the ALJ concluded Ms. Wheeler had

not examined Plaintiff as of the time she rendered her opinion. Tr. 27. However, a

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 29

no tender points, normal musculoskeletal exam, and normal mental status examination." Tr. 27; *see* Tr. 955. However, Ms. Wheeler's opinion was based on Plaintiff's fibromyalgia diagnosis. Tr. 873-74. "[A] person with fibromyalgia may have 'muscle strength, sensory functions, and reflexes [that] are normal.'" *Revels*, 874 F.3d at 663. Normal objective examination results can be "perfectly consistent with debilitating fibromyalgia." *Id.* at 666. In concluding that Ms. Wheeler's opinion was unsupported by the objective evidence, the ALJ failed to consider fibromyalgia's unique nature. *Id.* at 662. This finding is not supported by substantial evidence.

Although the ALJ provided one germane reason to discredit Ms. Wheeler's opinion, the ALJ's other findings were not supported. Because this case is remanded for other reasons, the ALJ is instructed to reconsider Ms. Wheeler's opinion on remand.

**C. Lay Opinion Evidence**

Plaintiff challenges the ALJ's evaluation of the lay opinions of Plaintiff's family members: Plaintiff's sister, Susannah V.; Plaintiff's mother, Nancy S.;

---

separate treatment note indicates Ms. Wheeler ordered blood work for Plaintiff on the date prior to rendering her opinion. *See* Tr. 1146.

Plaintiff's father, Larry F.; and Plaintiff's aunt, Linda A.[4]  ECF No. 12 at 14-17.

An ALJ must consider the statement of lay witnesses in determining whether a

claimant is disabled.  *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th

Cir. 2006).  Lay witness evidence cannot establish the existence of medically

determinable impairments, but lay witness evidence is "competent evidence" as to

"how an impairment affects [a claimant's] ability to work."  *Id.*; *see also Dodrill*,

12 F.3d at 918-19 ("[F]riends and family members in a position to observe a

claimant's symptoms and daily activities are competent to testify as to her

condition.").  If a lay witness statement is rejected, the ALJ "'must give reasons

that are germane to each witness.'"  *Nguyen*, 100 F.3d at 1467 (citing *Dodrill*, 12

F.3d at 919).

The ALJ discredited all four lay witness reports because the ALJ found them

to be inconsistent with specific aspects of Plaintiff's self-reporting.  Tr. 29-30.

Inconsistency with other evidence in the record is a germane reason to discredit lay

witness evidence.  *Lewis*, 236 F.3d at 512.  However, the ALJ separately

concluded that Plaintiff's self-reports were not credible.  Tr. 23-25.  It is

inconsistent for the ALJ to reject Plaintiff's self-reporting while also relying on

_____

[4]     The lay witnesses' last names are omitted from this Order to preserve

Plaintiff's privacy.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 31

those self-reports to discredit the lay opinion evidence. Because this case is remanded for other reasons, the ALJ is instructed to reconsider the lay opinion evidence on remand.

## D. Step Five

Plaintiff contends the ALJ's RFC formulation should have compelled a finding of disability at step five. ECF No. 12 at 3-4. However, because the ALJ erred in considering the evidence as detailed *supra*, the ALJ's RFC formulation is not supported by substantial evidence. Accordingly, the Court declines to address Plaintiff's argument based on the unsupported RFC formulation. The ALJ is instructed to reconsider the evidence and reformulate the RFC on remand.

## E. Remand

Plaintiff urges this Court to remand this case for an immediate award of benefits. ECF No. 12 at 21.

"The decision whether to remand a case for additional evidence, or simply to award benefits is within the discretion of the court." *Sprague*, 812 F.2d at 1232 (citing *Stone v. Heckler*, 761 F.2d 530, 533 (9th Cir. 1985)). When the Court reverses an ALJ's decision for error, the Court "ordinarily must remand to the agency for further proceedings." *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Benecke*, 379 F.3d at 595 ("the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation") (quoting

*INS v. Ventura*, 573 U.S. 12, 16 (2002)). However, in a number of Social Security cases, the Ninth Circuit has "stated or implied that it would be an abuse of discretion for a district court not to remand for an award of benefits" when three conditions are met. *Garrison*, 759 F.3d at 1020 (citations omitted). Under the credit-as-true rule, where (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand, the Court will remand for an award of benefits. *Revels*, 874 F.3d at 668. Even where the three prongs have been satisfied, the Court will not remand for immediate payment of benefits if "the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021.

Administrative proceedings are generally useful where the record "has [not] been fully developed," *Garrison*, 759 F.3d at 1020, there is a need to resolve conflicts and ambiguities, *Andrews*, 53 F.3d at 1039, or the "presentation of further evidence … may well prove enlightening" in light of the passage of time, *Ventura*, 573 U.S. at 18. Here, further proceedings are needed to resolve ambiguities in the record. *Andrews*, 53 F.3d at 1039. Specifically, testimony from a medical expert is needed to develop the record as to Plaintiff's fibromyalgia and mental health

impairments.  The ALJ found that Plaintiff's fibromyalgia diagnosis was not consistent with the relevant diagnostic criteria, but the ALJ also concluded that Plaintiff's fibromyalgia constituted a "severe impairment."  Tr. 18.  Medical expert testimony would help to resolve ambiguities in the record regarding Plaintiff's fibromyalgia.  Additionally, as discussed *supra*, the ALJ's discussion of the mental health evidence is at times overly selective.  Testimony from a medical expert, who has reviewed the entire record, will help to resolve ambiguities in the record.

The Court appreciates that the credit-as-true rule is a "prophylactic measure" that may be used to address the "equitable concerns about the length of time" that elapses between a claimant's application filing date and the date of a final decision. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1100 (9th Cir. 2014). Despite the additional time that further proceedings will take, the Court finds it is necessary to allow for medical expert testimony and to allow the ALJ to resolve outstanding ambiguities in the record.  Accordingly, the Court declines to exercise its discretion to remand this case for an immediate award of benefits.

On remand, the ALJ is instructed to take testimony from a medical expert who has reviewed the longitudinal record, reconsider the longitudinal medical evidence, reweigh Plaintiff's symptom allegations, reweigh the medical opinion evidence, reweigh the lay opinion evidence, and conduct a new sequential analysis.

# CONCLUSION

Having reviewed the record and the ALJ's findings, this Court concludes the ALJ's decision is not supported by substantial evidence and free of harmful legal error.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment (**ECF No. 12**) is **GRANTED**.

2. Defendant's Motion for Summary Judgment (**ECF No. 13**) is **DENIED**.

3. The Court enter **JUDGMENT** in favor of Plaintiff REVERSING and REMANDING the matter to the Commissioner of Social Security for further proceedings consistent with this Order pursuant to sentence four of 42 U.S.C. § 405(g).

The District Court Executive is directed to enter this Order, furnish copies to counsel, and **close the file**.

**DATED** November 14, 2019.



THOMAS O. RICE
Chief United States District Judge

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 35